UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HUI YE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-cv-4729 |
| | § | |
| XIANG ZHANG, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Pending before the Court is Defendants Zhang and Lau's Motion for Attorneys' Fees. (Doc. 154). After considering the Motion, the parties' briefs, oral arguments, supplemental briefing, and all applicable law, the Court determines that the Motion for Attorneys' Fees should be **GRANTED**.

## I.  BACKGROUND

The history of this case is long and detailed elsewhere, so the Court will only review the most pertinent facts. Plaintiff Hui Ye originally filed this suit against Defendant Xiang Zhang and Defendant's wife, Wing Lau (collectively referred to as "Defendants"), in December 2018, asserting claims for promissory estoppel, fraudulent inducement and fraudulent misrepresentation, breach of fiduciary duty individually and derivatively, constructive trust, declaratory judgment, fraudulent concealment, conversion, and violation of the Texas Theft Liability Act ("TTLA"). (Doc. 6). Defendants filed various counterclaims in response, but only some were ultimately pursued at Defendants' bench trial in October 2020. At issue in the present motion are Plaintiff's claims, and not Defendants' counterclaims.

1

In January 2019, the Court held a hearing on Ye's request for injunctive relief and ultimately granted a preliminary injunction. (Minute Entry 01/17/2019; Doc. 14). Shortly after, Zhang moved to vacate the preliminary injunction. (Doc. 17). The parties ultimately filed a mutually agreed injunction, which the Court entered with modifications. (Minute Entry 01/24/2019; Doc. 18).

At a hearing on November 4, 2019, the Court dismissed all claims against Lau. (Minute Entry 11/4/2019). The Court also granted in part and denied in part Zhang's Motion for Partial Summary Judgment. The Court dismissed Ye's claims for fraudulent concealment and conversion, but denied summary judgment as to Ye's claims against Zhang for promissory estoppel, fraudulent inducement and fraudulent misrepresentation, breach of fiduciary duty, and civil theft under the TTLA. *Id.*

In December 2019, the Court held a bench trial on Ye's claims. After the trial, Defendant moved for judgment on partial findings under Rule 52(c). (Minute Entry 12/18/2019). The Court took the motion under advisement and the parties filed post-trial briefing. In May 2020, the Court granted Defendant's motion and found that Ye had failed to prove his claims against Zhang for promissory estoppel, fraudulent inducement and misrepresentation, theft under the TTLA, and breach of fiduciary duty (both derivatively and individually). (Doc. 151). Ye's claim for declaratory judgment remains live because Zhang did not seek judgment on that claim.

After the Court entered its Findings of Fact and Conclusions of Law, Defendants filed the present Motion for Attorneys' Fees. (Doc. 154). The motion was briefed but, in the interim, the parties went to mediation. Mediation was ultimately unsuccessful, which prompted the second bench trial on Zhang's counterclaims. Because the Motion concerns fees and claims from the first trial, and does not implicate Zhang's counterclaims, it is now ripe for review.

## II. ANALYSIS

Defendants seek attorneys' fees as the prevailing parties for successfully defending Ye's civil theft claim under the TTLA. Texas allows the recovery of attorneys' fees "only if specifically provided for by statute or contract." *Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 155 (5th Cir. 2017) (citation omitted). The TTLA provides for mandatory attorneys' fees, stating that a prevailing party "shall be awarded court costs and reasonable and necessary attorneys' fees." Tex. Civ. Prac. & Rem. Code § 134.005(b). A prevailing party, for purposes of the TTLA, "includes a successful defendant, regardless of his success on other claims in the suit." *Gresham*, 861 F.3d at 156 (citing *Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702, 705-706 (Tex. App. 2014)).

In this case, the parties do not dispute that Defendants are prevailing parties under the TTLA and are therefore entitled to attorneys' fees and costs. Instead, the dispute centers on Defendants' assertion that there are fees incurred which cannot be segregated because they are "intertwined" with the theft claim. The Court will now turn to the question of segregating attorneys' fees.

### A. Segregation of attorneys' fees and "intertwined" claims

Because attorneys' fees are only recoverable if authorized by contract or statute, "fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006) (citations omitted). However, an exception exists under Texas law when the fees are based on claims that are so "intertwined" that they are inseparable or impossible to segregate. *Id.* The claimant bears the burden of demonstrating segregation is not required. *Lederer v. Lederer*, 561 S.W.3d 683, 701 (Tex. App. 2018) (citation omitted).

The Supreme Court of Texas has clarified that, "intertwined facts alone do not make fees for unrecoverable claims recoverable; 'it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.'" *Id.* (quoting *Chapa*, 212 S.W.3d at 313-14). In *Chapa*, the trial court did not require segregation of fees and allowed recovery on all claims because Chapa "was required to prove essentially the same facts in pursuing each of her three causes of action." 212 S.W.3d at 313. The Supreme Court of Texas rejected the trial court's factual basis, holding that a "common set of underlying facts" does not "necessarily [make] all claims arising therefrom inseparable." *Id.* (internal quotations omitted).

The Texas Supreme Court's refinement of this exception, however, did not set out to "require more precise proof." *Id.* at 314. The court recognized that "many if not most legal fees in such cases cannot and need not precisely allocated to one claim or the other." *Id.* at 313. There are legal services that are necessary, whether a claim is filed alone or with others, and recovery is not disallowed simply because such services "do double service." *Id.*

Defendants do not contend that all of the attorneys' fees accrued in defending Ye's claims are recoverable and need not be segregated. Defendants have segregated their fees, but assert there are fees which remain recoverable because they are intertwined with the theft claim. Thus, the central inquiry becomes whether Defendants have properly segregated the requested attorneys' fees.

### B. Whether Defendants have properly segregated fees

As noted above, whether Defendants' fees are based on "intertwined" claims does not hinge on whether the underlying facts are the same, but whether a legal service advanced both the theft claim and other unrecoverable claims. Put another way, "fees incurred for discrete legal

4

services that advance more than one cause of action are recoverable if the claimant is entitled to recover attorneys' fees for that service under at least one of the claims advanced." *In re Lesikar*, 285 S.W.3d 577, 584 (Tex. App. 2009) (citation omitted).

Texas courts provide guidance on how a claimant can satisfactorily segregate attorneys' fees. Contrary to Ye's position, even when fee segregation is required, "[a]ttorneys are not required to keep separate records documenting the exact amount of time working on one recoverable claim versus an unrecoverable claim." *Alief Indep. Sch. Dist. v. Perry*, 440 S.W.3d 228, 246 (Tex. App. 2013); *see also Chapa*, 212 S.W.3d at 314 ("Chapa's attorneys did not have to keep separate time records" when drafting portions of their petition.), *Lederer*, 561 S.W.3d at 701, *State Farm Lloyds v. Hanson*, 500 S.W.3d 84, 102 (Tex. App. 2016). "Segregation is sufficiently established if, for example, an attorney testifies that a given percentage of the drafting time would have been necessary even if the claim for which attorney's fees are unrecoverable had not been asserted." *Lederer*, 561 S.W.3d at 701 (citing *Perry*, 440 S.W.3d at 246). In *Perry*, as one example, it was sufficient for the attorney to testify that approximately eighty-percent of his attorneys' fees were recoverable after he reduced work that was solely for non-suited claims or against parties that were not found liable. 440 S.W.3d at 247.

Ye contends that Defendants must show each "component part" of a legal service advanced the theft claim, and has described this as an "extraordinarily difficult" burden. (Doc. 156 at 4). In fact, Texas courts have described the burden under *Chapa* as a "relaxed standard" and have rejected Ye's position. *Hanson*, 500 S.W.3d at 104. In *Hanson*, homeowners brought claims against their insurer for breach of contract, bad faith, and violation of the Prompt Payment Act. *Id.* at 89. The homeowners were entitled to attorneys' fees on their successful breach of contract claim, but not on their unsuccessful bad faith claim, thereby requiring

segregation of attorneys' fees. *Id.* at 103. The homeowners' attorney provided evidence in the form of a percentage estimate; estimating that ninety-five percent of the work was directly related to the contract claim and five percent was attributable only to the bad faith claim. *Id.*

Much like Ye, State Farm asserted that a "percentage estimate" was insufficient, and that "the only way to properly segregate is to examine each billing entry and deduct amounts that are not recoverable." *Id.* at 103-104. The court of appeals rejected State Farm's position because such a showing was not required "under the relaxed standard enunciated in *Chapa*." *Id.* at 104 (citation omitted). The attorney's testimony providing an estimate of the "fees incurred in, or at the least intertwined with," the recoverable claim was sufficient. *Id.*; *see also Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 202 (Tex. App. 2013) (holding segregation proper with attorney's affidavit stating eighty-percent of fees were recoverable and various activities could not be segregated because they were too intertwined), *Citizens Nat. Bank of Texas v. NXS Const., Inc.*, 387 S.W.3d 74, 87-88 (Tex. App. 2012) (finding counsel's percentage estimate sufficient under "relaxed standard" in *Chapa* even though counsel lacked monthly percentages and admitted it was not possible to review invoices to determine how fees were segregated).

Ye and Defendants agree that the only claim for which attorneys' fees are recoverable is the theft claim. In accordance with that understanding, Defendants have deducted many unrelated fees but include fees that they allege are intertwined with the theft claim such that they cannot be segregated. Under Texas law, this Court need not examine each billing entry to determine if Defendants' counsel has properly segregated fees. It is sufficient if counsel provides a percentage estimate of recoverable fees, as Defendants' counsel has done so here.

Defendants' declarations and evidence establish that counsel has properly segregated attorneys' fees. Defendants provide (1) a declaration from Kristie Tobin, lead counsel and attorney at Holman, Fenwick, and William ("HFW"), and (2) and an expert declaration from Thomas Lightsey, fellow attorney at HFW. Tobin states that as of January 17, 2019, Defendants incurred $424,199.08[1] in litigation expenses, including $420,015.00 in attorneys' fees and $4,194.08 in costs. (Doc. 154-2 at ¶ 4). Tobin also notes that all fees incurred in defense of the TTLA claim were equally shared by Zhang and Lau up until the claim against Lau was dismissed on November 4, 2019. *Id.* at ¶ 3. Since Lau's dismissal, the remaining fees are assigned to Zhang. *Id.* Lightsey also provides his expert opinion on the reasonableness of the attorneys' fees, and how they are intertwined with the fraud, breach of fiduciary duty, and conversion claims. (Doc. 154-1 at ¶¶ 4, 9).[2]

Of the total fees and costs, Tobin and Lightsey state that at least $343,016.66 of attorneys' fees and $4,194.08 of costs were related to the defense of the theft claim, either directly or as part of the fraud, conversion, and breach of fiduciary duty claims that are intertwined with the theft claim. *Id.* at ¶¶ 2, 4. They also include a chart displaying the total fees incurred, how much was reduced, and the total recoverable fees. *Id.* at ¶ 2. The total amount of recoverable attorneys' fees represents approximately eighty-percent (80.8%) of the total fees incurred. Although Tobin does not explicitly speak in percentages, the detailed table and declaration provides the same information as required under *Chapa*.

---

[1] By the Court's addition, the attorneys' fees and costs total $424,206.08.

[2] Lightsey also provides information regarding the hourly rates of the attorneys and paralegals, discussed *infra*, Section II.C.

After Ye's opposition, Defendants have further reduced fees that they admit should not have been included. (Doc. 157 at 5). With that deduction, Defendants request $341,359.16 in fees (subtracting $1,657.50). *Id.* at 9-10.

Ye mounts two principal arguments against Defendants' requested fees: (1) many of the fees relate only to unrecoverable claims, and (2) the theft claim was solely about Ye's personal tax refund so it is entirely distinct from the other claims. Because Texas law does not require an accounting of each billing entry, the Court will summarize the overarching disputes and explain why Ye's arguments are unpersuasive.

A review of the disputed fees reveals that Tobin's methodology for reducing fees is appropriate. There are various fees deducted because they were not related to the theft claim, and there are fees that were either directly tied to, or "intertwined" with, the theft claim. For example, there are several hours logged for drafting an answer to the complaint. (Doc. 154-2 at 8). Ye argues this type of "general case preparation and strategy development" is not recoverable. (Doc. 156 at 5). Under *Chapa*, a legal service like drafting an answer is precisely the type of service that is intertwined because it would have been necessary even if the theft claim had been the only claim. The fact that it also benefited the defense of other claims does not preclude recovery.

At its core, Ye's suit was about theft—whether described as misappropriation for a breach of fiduciary duty claim, conversion for a conversion claim, or theft for the TTLA claim. In the introductory section of Ye's First Amended Complaint, he accused Defendants of "misappropriation" and referred to "funds seized" by Defendants. *Id.* at ¶¶ 14-15. Ye also alleged a "pattern of deceit and possible fraud, theft and conversion," as well as "misappropriation." *Id.* at ¶ 41. In discussing his breach of fiduciary duty claim (individually, not derivatively), Ye accused Zhang of "misappropriating, stealing, and/or converting." *Id.* at ¶ 95. Similarly, under

his fraudulent concealment claim, he alleged Zhang "stole and converted." *Id.* at ¶ 117. In his conversion claim, he, again, alleged Defendants "unlawfully asserted dominion over" his assets. *Id.* at ¶ 125. Additionally, the alleged harm for his claims, including irreparable harm for injunctive relief, was loss of the same property and assets he claimed had been stolen by Defendants. Put shortly, it is impossible to distinguish the allegations of theft from Ye's other claims for relief.

In his brief and at the hearing, Ye made much of the fact that his claims required proving different elements. This Court is unpersuaded by this discussion. Fees are recoverable "when discrete legal services advance both a recoverable and unrecoverable claim," and the claims are intertwined. *Lederer*, 561 S.W.3d at 701 (quoting *Chapa*, 212 S.W.3d at 313-14). A legal service can advance, or in this case defend, various claims even if each claim must ultimately show different elements. This is so because the same information or facts can be used to establish or negate different elements across claims. For example, Ye disputes the fees for reviewing documents and meeting with Defendants regarding the sale of the Houston Warehouse. But as discussed above, the Warehouse sale pervaded many, if not all, of Ye's claims. Thus, by researching the details of the Warehouse sale, Defendants' counsel could better defend the claims of theft, breach of fiduciary duty, conversion, and fraudulent concealment.

Similarly, the injunctive relief litigated in the early stages of this suit are intertwined with the theft claim. Ye's First Amended Complaint alleged theft of the water filter inventory sales, the Houston Warehouse sale proceeds, and a U.S. patent. (Doc. 6 ¶ 129). Ye's alleged harm resulting from the alleged breach of fiduciary duty was loss of that same property, and the conversion claim was based on conversion of the same property as well. *Id.* at ¶¶ 142, 151.

Because of the overlap in the allegations, the legal services completed to defend the injunctive relief also advanced their defense of the theft claim.

Ye also contends that the theft claim efforts could not have advanced the breach of fiduciary duty or fraud claims because the theft claim was "ultimately narrowed" to Ye's personal tax refund deposited into OnePurify's account without his consent. (Doc. 156 at 8-9). The Court's first Findings of Fact and Conclusions of Law show otherwise. In Ye's post-trial brief, he continued to assert that Zhang unlawfully appropriated (1) revenue and assets of the U.S. companies, (2) both the sales proceeds from the Houston Warehouse and the Warehouse itself by selling it without Ye's consent, (3) company shipping stamps, and (4) tax refunds due to Ye. (Doc. 134-1 at 31). The Court adjudicated each of those allegations and found none of them were proven. (Doc. 151 at 23-29). Because the theft claims largely tracked the allegations under the conversion and breach of fiduciary duty claims, it is reasonable that discovery and other litigation efforts would have advanced those interrelated claims.

Ye's additional challenges in his supplemental briefing repeat the same mistakes. Ye disputes services by attorneys Esparza and Tobin for reviewing a receiver action against the Houston Warehouse, as well as the sale of the Warehouse. (Doc. 186 at 4). As discussed above, the history of the Warehouse, including past claims and the sale, were intertwined with the defense of the theft claim. Similarly, the intertwined nature of the injunctive relief has also been established. Ye also argues that services for responding to a motion for continuance and preparing attorneys' fees (including cost allocation, invoice review, and an expert affidavit) should be excluded. Such services fall under the category described by the *Chapa* court as fees that are recoverable because they are necessary whether a claim is filed alone or with others. 212

10

S.W.3d at 314. The Court disagrees with Ye's challenges, and accordingly rejects Ye's proposed deductions of fees.

In sum, Defendants have provided sufficient evidence to show that attorneys' fees have been properly segregated under Texas law. Contrary to Ye's contentions, Defendants are not required to parse out each paragraph of a petition nor must this Court account for each billing entry. It is sufficient for Defendants' counsel to estimate a percentage of fees that remain recoverable. Even when looking closer at the entries that Ye disputes, the Court is unpersuaded by Ye's characterization of those fees as unrecoverable.

### C. General reasonableness of attorneys' fees

The Court briefly establishes the general reasonableness of the fees requested. In Texas, like in federal courts, a two-step method is applied to determine if an attorneys' fee award is reasonable. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). First, the court must determine the "lodestar" by calculating "the reasonable hours worked multiplied by a reasonable hourly rate." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). Claimants "should include the basic facts underlying the lodestar, which are: (1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked." *Id.* (quoting *El Apple*, 370 S.W.3d at 763). Second, the court may then adjust the lodestar up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *El Apple*, 370 S.W.3d at 760. If a claimant seeks an enhancement to the lodestar, it must provide specific evidence showing it is necessary to achieve a reasonable fee award. *Rohrmoos Venture*, 578 S.W.3d at 501. "Likewise, if a fee opponent seeks a reduction, it bears the burden of providing specific evidence to overcome the presumptive reasonableness of the base lodestar figure." *Id.*

11

The hourly rates for Defendants' attorneys and paralegals are as follows and are reasonable: Jacob Esparza at a rate of $350 (reduced to ease the financial burden of Defendants); Kristie Tobin at $275 (also reduced); Alex Mendez at $275 (also reduced); Melanie Fridgant at $195; Courtney Campion at $195; and paralegal Denise Hebert at $140. (Doc. 154-1 at ¶¶ 6-7). Defendants have also provided 185 pages of hourly breakdowns showing the date of service, which attorney provided services, a "narrative" or description, and the chargeable and non-chargeable hours. (*See* Doc. 154-2). Defendants have properly shown a reasonable lodestar and neither party seeks an enhancement or reduction. Accordingly, the fee award is reasonable under Texas law.

### III.  CONCLUSION

The Court **GRANTS** Defendants' Motion for Attorneys' Fees in the amount of $341,359.16 in fees and $4,194.08 in costs.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 31st day of March, 2021.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE